■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PATRICK PIRO, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Cooperman, J.), rendered April 13, 1982, convicting him of two counts of grand larceny in the second degree, upon a jury verdict, and imposing sentence.

Judgment affirmed.

Robert Galante, the People's main witness, testified that he formed Rainbow Management Corporation in 1979 for the purpose of purchasing and renovating residential properties in Brooklyn. According to Galante, he was the primary stockholder and chief officer of the corporation. Subsequently, the corporation purchased a building which had been designated a landmark and which contained two duplex apartments that were in need of repair. Thereafter, Galante hired defendant to supervise the renovation of the building and deal with the Landmark Commission. Galante claimed that he never authorized defendant to sign lease agreements on the corporation's behalf or to accept money from prospective tenants.

Peter Barash and Peter Jacob testified that defendant represented himself to be the owner of the building. On that basis, in July of 1979 they entered into a lease agreement with defendant

to rent the lower duplex apartment and, in three installments, remitted a total of $1,575 pursuant thereto. They further testified that, because the planned renovations were never completed as defendant had promised, they were unable to move into the apartment, and that defendant never returned the money he received from them.

Leygeri Koromvokis and Margaret Herrman also testified that defendant had told them he owned the same building. In August of 1979 they entered into a lease agreement with defendant to rent the upper duplex apartment, and in three installments remitted a total of $1,800 with respect thereto. In addition, Ms. Koromvokis testified that because she and Ms. Herrman informed defendant they could not afford the $750 brokerage fee, defendant accepted an additional $100 in cash from each of them and stated that he would settle the matter with the rental agent himself. They, too, were unable to move into the apartment because the planned renovations were never completed as defendant had promised, and, as with Jacob and Barash, defendant never returned the moneys he received from them. Moreover, the rental agent testified that he was never informed that Ms. Koromvokis and Ms. Herrman had leased the apartment and was never given a commission.

Galante disclaimed any knowledge of the putative tenants, their purported leases, or the money they remitted to defendant. Likewise, the putative tenants disclaimed any knowledge of Galante or Rainbow Management Corporation.

Defendant, who in 1976 had been convicted in Federal court of mail fraud and was the subject of a $17,500 Federal tax lien resulting from his failure to pay income taxes, testified that he was, in effect, a "silent partner" in Rainbow Management Corporation and was thus endowed with the authority to sign lease agreements and accept money from prospective tenants. Defendant confirmed the putative tenants' accounts regarding the lease agreements, but insisted that the money he had obtained from them had been applied toward the promised renovations. Defendant's nephew, Nicholas Piro, who pleaded guilty to criminal possession of a controlled substance as a result of an incident which occurred in September of 1979, and who admittedly passed a bad check earlier that same year, testified that he supervised the renovation work on the building and basically corroborated the foregoing portion of defendant's testimony.

Defendant further testified that he had informed Galante about the lease agreements with the putative tenants. Moreover, defendant admitted accepting a total of $200 from Ms. Koromvokis and Ms. Herrman to settle the brokerage fee with

the rental agent on their behalf. However, he claimed that he never gave the money to the rental agent because the latter never asked for it and, instead, had applied it toward the renovation of the building.

Viewing the evidence in the light most favorable to the prosecution, as we must, we conclude that a rational trier of fact could have found, as did the jury at bar, that the People proved beyond a reasonable doubt that defendant intended to defraud the putative tenants of the money he obtained from them pursuant to the purported lease agreements which he knew he had no authority to execute (see *Jackson v Virginia,* 443 US 307; *People v Contes,* 60 NY2d 620; Penal Law, § 155.05, subd 2, par [a]; § 155.35). The case hinged upon a resolution of the contradictory testimony offered by Galante and the four putative tenants on the one hand, and that given by defendant and his nephew on the other. The credibility as well as the weight to be given the testimony of the respective witnesses was within the province of the jury (see, e.g., *People v Cook,* 99 AD2d 552; *People v Rosenfeld,* 93 AD2d 872). Defendant cannot successfully urge, on the record herein, that the testimony of the People's witnesses was incredible as a matter of law so as to justify the court's interference with the jury's function (see *People v De Maio,* 81 AD2d 643).

We also find, contrary to defendant's contention, that neither of the two counts of grand larceny in the second degree upon which he was ultimately convicted is duplicitous. One of the counts aggregated the moneys defendant fraudulently obtained from Ms. Koromvokis and Ms. Herrman, and the other aggregated those which he likewise obtained from Barash and Jacob. Because Ms. Koromvokis and Ms. Herrman, and Barash and Jacob, respectively, planned to share an apartment pursuant to a single lease agreement, each of the respective counts was effectively predicated upon the aggregation of separate larcenous takings from *single sources.* Under these circumstances, defendant cannot successfully maintain that the counts in question were improperly charged (see *People v Perlstein,* 97 AD2d 482). Titone, J. P., Weinstein, Rubin and Boyers, JJ., concur.